GREG L. KIRAKOSIAN  (SBN 294580)
**KIRAKOSIAN  LAW,  APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE: (213) 417-9790
FACSIMILE:  (213) 477-2355
 [GREG@KIRAKOSIANLAW.COM]

Attorneys for Plaintiffs, *ANTRANIK MINASSIAN,*
*DANNY MINASSIAN,* and *MARIE MINASSIAN*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTRANIK MINASSIAN, an individual; DANNY MINASSIAN, an individual; and MARIE MINASSIAN, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF MONTEBELLO, a public entity; WILLIAM NAKAGAWA; OSCAR CHAVEZ; CHRISTOPHER POWERS; and DOES 4 through 15, inclusive, <br><br> Defendants. | **Case No.: 2:19-cv-06769 MWF MAAx** <br><br> **SECOND AMENDED COMPLAINT FOR DAMAGES:** <br> 1. **VIOLATION OF CIVIL RIGHTS – WRONGFUL DEATH;** <br> 2. **VIOLATION OF CIVIL RIGHTS – SEARCH AND SEIZURE;** <br> 3. **VIOLATION OF CIVIL RIGHTS – EXCESSIVE FORCE;** <br> 4. **VIOLATION OF CIVIL RIGHTS – DENIAL OF MEDICAL CARE;** <br> 5. **FALSE ARREST / FALSE IMPRISONMENT;** <br> 6. **NEGLIGENCE;** <br> 7. **VIOLATION OF BANE ACT (Cal. Civ. Code § 52.1)** <br> 8. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** <br> 9. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;** <br><br> **DEMAND FOR JURY TRIAL** |

SECOND AMENDED COMPLAINT FOR DAMAGES

## **INTRODUCTION**

1.      Plaintiffs Antranik Minassian, Danny Minassian, and Marie Minassian, individually and as successors in interest, bring this civil rights and state tort action for compensatory and punitive damages against Defendants the City of Montebello, Officers William Nakagawa, Oscar Chavez, Christopher Powers, and DOES 4 through 15 for violating rights conferred under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments, and California law in connection with the wrongful death of David Minassian on March 2, 2019.

2.      In the early morning hours of March 1, 2019, David was suffering from respiratory distress and Plaintiffs called 911 to seek emergency medical help. Shortly thereafter, Montebello Police Officers William Nakagawa, Oscar Chavez, and Christopher Powers responded and knew that David was suffering from respiratory failure, having trouble breathing, was bleeding from his nose and mouth, and was at risk of death as a result. Despite the foregoing, Officers Nakagawa, Chavez, and Powers forcefully brought David to the ground, pinned him down, put their body weight on him, searched him, handcuffed him, held him to the ground against his will, and left him handcuffed on the ground without reasonable or justifiable cause and while David struggled to breath, asked for help, and repeatedly stated he could not breath.

3.      At the time of his arrest, David did not pose any threat of death or bodily injury to Montebello Police Officers or anyone else. Instead, David was struggling to breath, bleeding from his nose and mouth, and was obviously in critical need of emergency medical care and treatment. Officers Nakagawa, Chavez, and Powers did not timely summon medical care or permit medical personnel to treat David. The arrest, use of force, and unnecessary delay in medical care to David caused him extreme physical and emotional pain and suffering, and was a contributing cause of David's death. The use of force against David was excessive and objectively unreasonable under the circumstances, especially because David did not pose a threat of death or injury to anyone and was struggling to breath.

- 2 –

SECOND AMENDED COMPLAINT FOR DAMAGES

4.     Plaintiffs, the Minassian Family, were held back and forced to watch as the Montebello Police Officers engaged in the foregoing conduct and watched as David gasped for air, begged for help, suffered from pain and emotional distress, and ultimately watched David die as he was surrounded by Montebello Police Officers.

## PARTIES

5.     Decedent David Minassian was, at all relevant times, an individual residing in the City of Montebello, California.

6.     Plaintiff Antranik Minassian is, and at all relevant times was, Decedent's surviving father and resides in the City of Montebello, California. Antranik Minassian sues both in his individual capacity as the surviving father of Decedent and in a representative capacity as a successor in interest to Decedent. Antranik Minassian seeks both survival and wrongful death damages under Federal and State law, as well as funeral and burial expenses and attorney's fees.

7.     Plaintiff Danny Minassian is, and at all relevant times was, Decedent's surviving brother and resides in the City of Montebello, California. Danny Minassian sues both in his individual capacity as the surviving brother of Decedent and in a representative capacity as a successor in interest to Decedent. Danny Minassian seeks both survival and wrongful death damages under Federal and State law, as well as funeral and burial expenses and attorney's fees.

8.     Plaintiff Marie Minassian is, and at all relevant times was, Decedent's surviving sister and resides in the City of Montebello, California. Marie Minassian sues both in her individual capacity as the surviving sister of Decedent and in a representative capacity as a successor in interest to Decedent. Marie Minassian seeks both survival and wrongful death damages under Federal and State law, as well as funeral and burial expenses and attorney's fees.

9.     At all relevant times, Defendant City of Montebello ("Montebello") is and was a municipal corporation existing under the laws of the State of California. Montebello is a chartered subdivision of the State of California with the capacity to be

sued. Montebello is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Montebello Police Department and its agents and employees. At all relevant times, Defendant Montebello was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Montebello Police Department and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, Montebello was the employer of DOES 1 - 15.

10.     Defendant William Nakagawa is and was, at all relevant times, an officer working for the City of Montebello and was acting under color of law within the course and scope of his duties as an officer for the Montebello Police Department. At all relevant times, Defendant Nakagawa was acting with the complete authority and ratification of his principals and the City of Montebello.

11.     Defendant Oscar Chavez is and was, at all relevant times, an officer working for the City of Montebello and was acting under color of law within the course and scope of his duties as an officer for the Montebello Police Department. At all relevant times, Defendant Chavez was acting with the complete authority and ratification of his principals and the City of Montebello.

12.     Defendant Christopher Powers is and was, at all relevant times, an officer working for the City of Montebello and was acting under color of law within the course and scope of his duties as an officer for the Montebello Police Department. At all relevant times, Defendant Powers was acting with the complete authority and ratification of his principals and the City of Montebello.

13.     Defendants DOES 4 - 10 ("DOE Officers") are officers working for the Montebello Police Department. DOE Officers were acting under color of law within the course and scope of their duties as officers for the Montebello Police Department. DOE Officers were acting with the complete authority and ratification of their principal, Defendant Montebello.  The use of the term "Defendants" in any of the allegations of this Complaint, unless specifically set forth as otherwise, is intended to include and

charge both jointly and severally, not only the City of Montebello, but all Defendants designated as DOES 1 - 10 as well.

14.     Defendants DOES 11 - 13 are supervisory officers for the Montebello Police Department who were acting under color of law within the course and scope of their duties as officers for the Montebello Police Department. DOES 11 - 13 were acting with the complete authority and ratification of their principal, Defendant Montebello.

15.     Defendants DOES 14 - 15 are managerial, supervisorial, and policymaking employees of the Montebello Police Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for Montebello. DOES 14 - 15 were acting with the complete authority and ratification of their principal, Defendant Montebello.

16.     DOES 4 – 15 are sued in their individual capacity and Plaintiffs are informed and believe that DOES 4 – 15 were, at all relevant times, residents of the County of Los Angeles, California.

17.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOE Officers were acting on the implied and actual permission and consent of Defendants DOES 11 - 15.

18.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 4 - 15 were acting on the implied and actual permission and consent of the City of Montebello.

19.     The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 4 - 15, inclusive, are unknown to Plaintiffs, who otherwise sues these Defendants by such fictitious names. Plaintiffs will seek leave to amend their complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants are responsible in some manner for the conduct or liabilities alleged herein.

20.     At all times mentioned herein, each and every Defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the

SECOND AMENDED COMPLAINT FOR DAMAGES

hiring, conduct, and employment of each and every Defendant.

21.    All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

22.    On or around May 22, 2019, Plaintiffs filed a comprehensive and timely claim for damages with the City of Montebello pursuant to applicable sections of the California Government Code. Having received no written rejection, this claim was rejected by operation of law on July 8, 2019.

## JURISDICTION AND VENUE

23.    This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

24.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## STATEMENT OF FACTS

25.    In the morning of March 1, 2019, at approximately 2:00 a.m., Plaintiff Marie Minassian heard her brother chocking and gasping for air.  Marie observed her brother, David Minassian, unable to breath and bleeding from his nose and mouth. Plaintiff Marie is and was, at all relevant times, a certified Emergency Medical Technician and a trained first responder that works at the emergency room at the Long Beach VA Hospital.  Plaintiff Marie is also a Pre-Med student studying to become a

Physician Assistant. With her training, Plaintiff Marie immediately administered necessary aid until David became responsive and made sure David was able to breath. However, David continued to struggle breathing, but was stable. At this point, David's father, Antranik Minassian, and his brother, Danny Minassian, were awake and assisted David.

26.    At approximately 2:02 a.m., Plaintiff Marie called 911 Emergency to the City of Montebello and requested ambulatory and/or medical assistance.  Marie described David's emergency medical condition and informed 911 that David was having a medical emergency and having trouble breathing. After providing her address, Marie hung-up and continued to assist David to assure his breathing pathways were clear and he was able to breath.  David and the Minassian Family waited for ambulatory and/or medical assistance to arrive.

27.    Rather than any medical professionals or emergency medical technicians being called, several minutes after Marie's 911 call, approximately three Officers Nakagawa, Chavez, and Powers of the Montebello Police Department arrived and entered the home.  Upon entering, the Minassian Family was assisting David to make sure his air pathways were clear and he was able to breath.  However, David was still in critical condition and his ability to continue breathing was paramount.

28.    Rather than the Officers Nakagawa, Chavez, and Powerskeeping David stable and assuring that he could breathe or to allow the Minassian Family to continue to assist him, Officers Nakagawa, Chavez, and Powers grabbed David, held him down, turned him on his stomach, put their body weight on him, hand-cuffed him, and arrested him without good, legal, or justifiable cause. At the time of his arrest, David did not pose any threat of death or bodily injury to Montebello Police Officers or anyone else. Instead, David was struggling to breath, bleeding from his nose and mouth, and was obviously in critical need of emergency medical care and treatment.  Officers Nakagawa, Chavez, and Powers did not timely summon medical care or permit medical personnel to treat David.  The arrest, use of force, and unnecessary delay in medical

care to David caused him extreme physical and emotional pain and suffering, and was a contributing cause of David's death.  The use of force against David was excessive and objectively unreasonable under the circumstances, especially because David did not pose a threat of death or injury to anyone and was struggling to breath.

29.    The Minassian Family, in shock, continued to inform Officers Nakagawa, Chavez, and Powers that they had called for medical help because David was unable to breath and Marie Minassian repeatedly informed Officers Nakagawa, Chavez, and Powers that their conduct of holding David on the ground, putting their weight on him, and leaving him handcuffed on the ground was interfering with David's ability to breath. The Minassian Family begged that the police officers stop their unnecessary conduct.  During this time, David was also repeatedly stating that he could no longer breath and blood continued to come up through his nose and mouth. Despite the foregoing, at all relevant times, Officers Nakagawa, Chavez, and Powers refused to cease in their conduct.

30.    As David continued to gasp for air and the Minassian family continued to inform Officers Nakagawa, Chavez, and Powers that David was unable to breath, more DOE Police Officers entered the home and surrounded David and the Minassian Family. As David struggled to breath and continued to gasp for air, Officers Nakagawa, Chavez, and Powers and additional unknown DOE Police Officers continued to hold David down and place their body weight on him. The Minassian Family observed as Officers Nakagawa, Chavez, and Powers and additional unknown DOE Police Officers continued to detain David and hold him on the ground. David could only ask for help and stated that he could not breath.  The Minassian Family repeatedly and continuously screamed out to the Officers that David was asking for help as he was struggling for air. The Minassian Family begged that the Police Officers stop their unnecessary and obviously harmful conduct or, at the very least, assist David to breath or allow Marie, a trained EMT, to help him breath.

31.    As the Officers continued to hold David handcuffed on the ground and

- 8 –

after getting no response from the Police Officers, the Minassian Family attempted to call 911 again and also record the Police Officer's harmful conduct. However, the Police Officers demanded that they keep their phones away "or else." The Police Officers continued to hold David as he was gasping for air and refused to stop their conduct, refused to help David, and refused to allow Marie or the Minassian Family to assist David.

32. The Minassian Family was forced to wait and watch as David remained hand-cuffed on the ground. The Minassian Family watched as David fought for his life, gasp for air, and repeatedly say "help" or "I can't breathe." The Minassian Family watched for nearly ten minutes before David became completely unresponsive. Finally, at approximately 2:25 a.m., the Montebello Fire Department Paramedics either arrived on scene or the Police Officers allowed the emergency paramedics to enter the residence. Upon entering, the paramedics simply checked the vital signs of David and informed all parties that David had expired. The paramedics did not provide any emergency treatment to try and revive David.

33. Based on the facts readily available and known to the City of Montebello , Officers Nakagawa, Chavez, and Powers, and the DOE Police Officers, no reasonable conclusion could be drawn that force used was reasonable, as Decedent posed no immediate threat of death or seriously bodily injury at the time. In fact, Decedent was incapacitated and having extreme difficulty breathing and, as a result, his health and safety were at risk and immediate medical attention was necessary to avoid imminent harm, serious bodily injury, and ultimately his death.

34. In light of the circumstances, no objective facts readily available and known to the City of Montebello, Officers Nakagawa, Chavez, and Powers, and the DOE Police Officers could have reasonably led the Officers to conclude that Decedent was a threat requiring the use force.

35. Moreover, in light of the circumstances, no objective facts readily available and known to the City of Montebello, Officers Nakagawa, Chavez, and

Powers, and the DOE Police Officers could have reasonably led the Officers to conclude that handcuffing the Decedent, who was bleeding from his nose and mouth and unable to breath, was appropriate and justified. In fact, the City of Montebello, Officers Nakagawa, Chavez, and Powers, and the Police Officers knew that the Decedent was unable to breath and knew or should have known that handcuffing the Decedent, placing their full body weight on him, and ultimately leaving him on the ground in a handcuffed position would have further exacerbated the Decedent's life threatening medical condition.

36. The City of Montebello, Officers Nakagawa, Chavez, and Powers, and the DOE Police Officers knowingly denied the Decedent medical attention for known medical needs with a deliberate indifference to his health and safety and conspired to deprive Plaintiff of his constitutionally protected rights and ultimately his life and liberty. Moreover, the City of Montebello, Officers Nakagawa, Chavez, and Powers, and the DOE Police Officers knowingly exacerbated Decedent's life-threatening medical condition by handcuffing the Decedent, placing their body weight on him, and ultimately requiring him to remain handcuffed and remain on the ground and on his back as he continued to have difficulty breathing. As a direct result of the City of Montebello, Officers Nakagawa, Chavez, and Powers, and the DOE Police Officers conduct, the Decedent was ultimately killed and unnecessarily deprived of his life and liberty.

37. As a result of the foregoing, Decedent suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity. Further, Defendant Officers' actions and use of force, including handcuffing the Decedent who was bleeding from his nose and mouth and having difficulty breathing, placing their full body weight on him, and requiring him to remain handcuffed on his back, violated their training and standard police officer training.

38. The City of Montebello, Officers Nakagawa, Chavez, and Powers, and the DOE Police Officer Defendants, under color of law intentionally, recklessly,

negligently, unlawfully, with malice, fraud, and oppression violated Decedent's Civil Rights and his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

39. Plaintiffs' further alleges that Defendants, with deliberate indifference to and reckless disregard for the safety and well-being of Plaintiff, and in violation of the Fourth, Eighth, and Fourteenth Amendments to the Constitution, committed or allow to be committed, acts which deprived Plaintiff of his Constitutional rights.

40. Plaintiffs' further allege that Defendants, with deliberate indifference to and reckless disregard for the Decedent's known life threatening medical condition, safety, and well-being, and in violation of the Fourth, Eighth, and Fourteenth Amendments to the Constitution, denied the Decedent medical attention for known medical needs with a deliberate indifference to his health and safety and conspired to deprive Plaintiff of his constitutionally protected rights and ultimately his life and liberty. Moreover, the City of Montebello, Officers Nakagawa, Chavez, and Powers, and the DOE Police Officers knowingly exacerbated Decedent's life-threatening medical condition by handcuffing the Decedent, placing their body weight on him, and ultimately requiring him to remain handcuffed and remain on the ground and on his back as he continued to have difficulty breathing.

41. The City of Montebello, Officers Nakagawa, Chavez, and Powers, and the DOE Police Officers directly participated and/or aided and abetted in wrongful conduct, as alleged herein, and ultimately caused Decedent to die. Plaintiffs' are informed and believe that, thereafter, the City of Montebello, Officers Nakagawa, Chavez, and Powers, and the DOE Police Officers engaged in efforts to cover up said conduct by preparing or authorizing or approving false police reports, and/or aiding and abetting the preparation, authorization or approval of false reports to cover up said wrongful conduct and violations of Decedent's rights.

SECOND AMENDED COMPLAINT FOR DAMAGES

42.    The Plaintiffs brings this claim as successors-in-interest to the Decedent and seek both survival and wrongful death damages for the violation of Decedent's rights. Due to the conduct of the City of Montebello, Officers Nakagawa, Chavez, and Powers, and the DOE Police Officers, Decedent and Plaintiffs have suffered general damages and special damages, all in a sum to be proved at trial.  Due to the conduct of Defendants, Plaintiffs has been required to incur attorneys' fees and will continue to incur attorneys' fees, all to Plaintiffs' damages in a sum to be proved at trial and recoverable pursuant to 42 U.S.C.§1988.

43.    The City of Montebello, Officers Nakagawa, Chavez, and Powers, and the DOE Police Officers acted with a conscious disregard of Decedent's and Plaintiffs' rights conferred upon them by Section 1983, Title 42 of the United States Code, the Fourth Amendment to the United States Constitution and California Civil Code Section 3333, by intentionally and unnecessarily causing Decedent great bodily injury and death and causing harm to Plaintiffs.

44.    Said conduct of Defendants constitutes malice, oppression and/or fraud entitling Plaintiffs to recover punitive damages against the City of Montebello, Officers Nakagawa, Chavez, and Powers, and the DOE Police Officers in an amount suitable to punish and set an example of said Defendants.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### WRONGFUL DEATH

### (*Plaintiffs against* Officers Nakagawa, Chavez, and Powers, and *DOE Officers*)

45.    Plaintiffs reallege and incorporate by reference the paragraphs and allegations contained in all the preceding paragraphs of this complaint, as though fully set forth herein.

46.    Defendants Nakagawa, Chavez, and Powers, and DOE Officers (hereinafter referred as "Defendant Officers"), under color of law, did intentionally, recklessly, negligently, unlawfully, and with malice, fraud, and oppression violate

Decedent's Civil Rights by (1) detaining Decedent without reasonable suspicion and arrested him without probable cause; (2) using force to arrest Decedent that was excessive and unreasonable, particularly because Decedent did not pose an immediate threat of injury to anyone and was in critical need of medical attention; and (3) denied medical care to Decedent.

47.    The foregoing conduct caused and contributed to Decedent's great physical pain and emotional distress and was a contributing cause of Decedent's death. Defendants knew that their conduct could and would likely result in further significant injury or the unnecessary and wanton infliction of pain but disregarded those risks and contributed and caused Decedent great bodily harm and death.

48.    The conduct of Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

49.    As a result of their misconduct, each of Defendant Officers are liable for Decedent's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

50.    Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in her familial relationship with Decedent.

51.    The aforementioned actions of Defendant Officers, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Decedent and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

52.    Defendant Officers thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with her familial relationship with Decedent.

53.     As a direct and proximate cause of the acts of Defendant Officers, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural life.

54.     The conduct of Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE Officers.

55.     Plaintiffs bring this claim both individually and as a successor in interest to Decedent, and seeks both survival and wrongful death damages for the violation of Decedent's rights. Plaintiffs also seeks funeral and burial expenses and attorney's fees under this claim.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### UNREASONABLE SEARCH AND SEIZURE

### (*Plaintiffs against* Officers Nakagawa, Chavez, and Powers, and *DOE Officers*)

56.     Plaintiffs reallege and incorporate by reference the paragraphs and allegations contained in all the preceding paragraphs of this complaint, as though fully set forth herein.

57.     Defendants Nakagawa, Chavez, and Powers, and DOE Officers (hereinafter referred as "Defendant Officers") detained Decedent without reasonable suspicion and arrested him without probable cause.

58.     When Defendant Officers placed Decedent in handcuffs, they violated Decedent's right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

59.     The foregoing conduct caused and contributed to Decedent's great

- 14 –

physical pain and emotional distress and was a contributing cause of Decedent's death. Defendants knew that their conduct could and would likely result in further significant injury or the unnecessary and wanton infliction of pain but disregarded those risks and contributed and caused Decedent great bodily harm and death.

60.   The conduct of Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

61.   As a result of their misconduct, Defendant Officers are liable for Decedent's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

62.   Plaintiffs bring this claim as a successor in interest to Decedent, and seeks both survival and wrongful death damages for the violation of Decedent's rights. Plaintiffs also seek funeral and burial expenses and attorney's fees under this claim.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### EXCESSIVE FORCE

### (*Plaintiffs against* Officers Nakagawa, Chavez, and Powers, and *DOE Officers*)

63.   Plaintiffs reallege and incorporate by reference the paragraphs and allegations contained in all the preceding paragraphs of this complaint, as though fully set forth herein.

64.   As alleged above, Decedent was struggling to breath and suffering from a critical and life-threatening medical condition. Moreover, Decedent was unarmed and did not pose a threat of death or serious bodily injury to Defendants Nakagawa, Chavez, and Powers, and DOE Officers (hereinafter referred as "Defendant Officers")or anyone else.  Nonetheless, Defendant Officers used excessive force in detaining Decedent by, among other things, forcefully brought David to the ground, pinned him down, put their body weight on him, searched him, handcuffed him, held him to the ground against his will, and left him handcuffed on the ground without reasonable or justifiable cause and

- 15 –

while David struggled to breath, asked for help, and repeatedly stated he could not breath.

65. The foregoing conduct was excessive and unreasonable, particularly because Decedent was unarmed and did not pose an immediate threat of death or serious bodily injury to Defendant Officers or anyone else.

66. The foregoing conduct caused and contributed to Decedent's great physical pain and emotional distress and was a contributing cause of Decedent's death. Defendants knew that their conduct could and would likely result in further significant injury or the unnecessary and wanton infliction of pain but disregarded those risks and contributed and caused Decedent great bodily harm and death.

67. Further, Defendant Officers' conduct and use of force violated their training and standard police officer training.

68. Defendant Officers' unjustified conduct deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

69. As a result of the foregoing, Decedent suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

70. The conduct of Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent, and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

71. Plaintiffs bring this claim as a successor in interest to Decedent, and seeks both survival and wrongful death damages for the violation of Decedent's rights. Plaintiffs also seek funeral and burial expenses and attorney's fees under this claim.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### DENIAL OF MEDICAL CARE

**(*Plaintiffs against* Officers Nakagawa, Chavez, and Powers, and *DOE Officers*)**

72.    Plaintiffs reallege and incorporate by reference the paragraphs and allegations contained in all the preceding paragraphs of this complaint, as though fully set forth herein.

73.    The denial of medical care by Defendants Nakagawa, Chavez, and Powers, and DOE Officers (hereinafter referred as "Defendant Officers")deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

74.    The denial of medical care contributed to Decedent's great physical pain and emotional distress and was a contributing cause of his death.

75.    Defendant Officers knew that failure to provide timely medical treatment to Decedent could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Decedent great bodily harm and death.

76.    The conduct of Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

77.    As a result of their misconduct, each of Defendant Officers are liable for Decedent's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

78.    Plaintiffs bring this claim as a successor in interest to Decedent, and seeks both survival and wrongful death damages for the violation of Decedent's rights. Plaintiffs also seek funeral and burial expenses and attorney's fees under this claim.

SECOND AMENDED COMPLAINT FOR DAMAGES

**FIFTH CLAIM FOR RELIEF**

**FALSE ARREST / FALSE IMPRISONMENT**

***(Plaintiffs against All Defendants)***

79.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

80.     Defendants City of Montebello, Nakagawa, Chavez, and Powers, and DOE Officers (hereinafter referred as "Defendants"), while working as officers for the Montebello Police Department and acting within the course and scope of their duties, intentionally deprived Decedent of his freedom of movement by use of force, threats of force, menace, fraud, deceit, and unreasonable duress. Defendants detained DECEDENT without reasonable suspicion and arrested him without probable cause.

81.     Decedent did not knowingly or voluntarily consent. Defendants detained Decedent for an appreciable amount of time. The conduct of Defendants was a substantial factor in causing the harm to Decedent.

82.     Defendant CITY is vicariously liable for the wrongful acts of Defendants Nakagawa, Chavez, and Powers, and DOE Officers pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

83.     The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Decedent, entitling Plaintiff to an award of exemplary and punitive damages.

84.     As a result of their misconduct, Defendants are liable for Decedent's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

85.     Plaintiffs bring this claim both individually and as a successor in interest to Decedent, and seeks both wrongful death and survival damages under this claim. Plaintiffs also seeks attorney's fees and funeral and burial expenses under this claim.

SECOND AMENDED COMPLAINT FOR DAMAGES

# SIXTH CLAIM FOR RELIEF

## VIOLATION OF BANE ACT

### (*Plaintiffs against All Defendants*)

86.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

87.    California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights. Moreover, "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105-06 (9th Cir. 2014); citing Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); Bender v. Cnty. of L.A., 217 Cal. App. 4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate and excessive force—is [] within the protection of the Bane Act").

88.    On information and belief, Defendants Nakagawa, Chavez, and Powers, and DOE Officers (hereinafter referred as "Defendant Officers")while working for the City of Montebello and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against Decedent.

89.    When Defendant Officers committed the foregoing conduct against Decedent, unreasonably detained him, and then denied him medical care, they interfered with his civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

90.    On information and belief, Defendants intentionally and spitefully committed the above acts to discourage Decedent from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

91.     On information and belief, Decedent reasonably believed and understood that the violent acts committed by Defendant Officers were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

92.     Defendants successfully interfered with the above civil rights of Decedent and Plaintiff

93.     The conduct of Defendants was a substantial factor in causing Plaintiff's harms, losses, injuries, and damages.

94.     The City is vicariously liable for the wrongful acts of Defendant Officers pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

95.     Defendants DOES 11-15 are vicariously liable under California law and the doctrine of respondeat superior.

96.     The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Decedent's and Plaintiff's rights, justifying an award of exemplary and punitive damages as to Defendant Officers.

97.     Plaintiffs bring this claim both individually and as a successor in interest to Decedent, and seeks both survival and wrongful death damages under this claim. Plaintiffs also seeks funeral and burial expenses and attorney's fees.

## SEVENTH CLAIM FOR RELIEF

### WRONGFUL DEATH – NEGLIGENCE

#### (*Plaintiffs against All Defendants*)

98.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

99.     Defendant City of Montebello, including Defendants Nakagawa, Chavez, and Powers, and DOES 4 - 15 (hereinafter referred as "Defendants")have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate

tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

100.   Defendants breached their duty of care. The actions and inactions of Defendants were negligent and reckless, including but not limited to:

(a) the failure of Defendants to properly and adequately assess the need to detain, arrest, and use force or deadly force against Decedent;

(b) the negligent tactics and handling of the situation with Decedent, including DOE Officers' pre-shooting negligence;

(c) the negligent detention, arrest, and use of force, including deadly force, against Decedent by Defendants;

(d) the failure of Defendants to provide prompt medical care to Decedent;

(e) the failure of Defendants to properly train and supervise employees, both professional and non-professional;

(f) the failure of Defendants to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Decedent; and

(g) the negligent communication of information during the incident.

101.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Decedent was caused to suffer severe pain and suffering and ultimately died. Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiff has suffered emotional distress and mental anguish. Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Decedent, and will continue to be so deprived for the remainder of her natural life.

102.   The City of Montebello is vicariously liable for the wrongful acts of Defendants Nakagawa, Chavez, and Powers, and DOE Officers (hereinafter referred as "Defendant Officers")pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees

within the scope of the employment if the employee's act would subject him or her to liability.

103.   Plaintiffs are informed and believe that the conduct of Defendants and Plaintiffs' injuries resulted from and arose directly out of Defendants' employment with the City of Montebello.  Defendants' conduct was motivated and arose, in whole or in part, by a desire to serve Defendant City of Montebello.  The City is liable for the acts, omissions and conduct of its employees pursuant to California Government Code Section 815.2.

104.   As a direct and proximate result of Defendants' conduct, Plaintiffs actually suffered past and future special damages, past and future general damages, mental anguish, emotional distress, and injury to his mind in an amount according to proof at trial.

105.   As a direct and proximate result of the negligence of Defendants and each of them, Plaintiff Antranik Minassian, Danny Minassian, and Marie Minassian have sustained pecuniary loss resulting from the loss of society, comfort, attention, and services of Decedent David Minassian in an amount to be proven at trial.

106.   As a further direct and proximate result of the negligence of Defendants and each of them, Plaintiff Antranik Minassian, Danny Minassian, and Marie Minassian have incurred funeral and burial expenses in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (*Plaintiffs against All Defendants*)

107.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

108.   Defendants' conduct was extreme and outrageous, and beyond the bounds of decency tolerated in a civilized society. Specifically, when Defendants knowingly and intentionally (1) failed to call for emergency medical treatment; (2) called the police department; (3) detained Decedent; (4) used unnecessary and unreasonable force in

detaining Decedent who was struggling to breath;   (5) failed to provide medical assistance to Decedent who was struggling to breath; and (6) refused to allow the Minassian Family to assist Decedent.

109.   Defendants' conduct was intended to cause Plaintiffs emotional distress and Defendants acted with reckless disregard to the probability that Plaintiffs would suffer emotional distress.

110.   Plaintiffs suffered severe emotional distress. Defendants' conduct was a substantial factor in causing Plaintiffs severe emotional distress. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered severe mental anguish, emotional distress, and humiliation and suffered from associated physical manifestations and injuries in a sum to be proven at trial.

111.   In doing the acts herein alleged, Defendants and each of them acted with malice and oppression in knowingly, purposefully, and intentionally committing the conduct. Said conduct was vile and despicable in that Defendants and each of them knew that David Minassian was in extreme respiratory distress and could not breath, and not only refused to provide medical treatment, but arrested David with physical force and ultimately caused his death.  Defendant acted with oppression, malice, and fraud, and are therefore liable for punitive damages.

112.   Plaintiffs are informed and believe that the conduct of Defendants and Plaintiffs' injuries resulted from and arose directly out of Defendants' employment with the City of Montebello.  Defendants' conduct was motivated and arose, in whole or in part, by a desire to serve Defendant City of Montebello.  The City is liable for the acts, omissions and conduct of its employees pursuant to California Government Code Section 815.2.

113.   As a direct and proximate result of Defendants' conduct, Plaintiffs actually suffered past and future special damages, past and future general damages, mental anguish, emotional distress, and injury to his mind in an amount according to proof at trial.

SECOND AMENDED COMPLAINT FOR DAMAGES

114.   As a direct and proximate result of Defendants' conduct, Plaintiff Antranik Minassian, Danny Minassian, and Marie Minassian have sustained pecuniary loss resulting from the loss of society, comfort, attention, and services of Decedent David Minassian in an amount to be proven at trial.

115.   As a further direct and proximate result of Defendants' conduct, Plaintiff Antranik Minassian, Danny Minassian, and Marie Minassian have incurred funeral and burial expenses in an amount to be proven at trial.

### NINTH CLAIM FOR RELIEF

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### *(Plaintiffs against all Defendants)*

116.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

117.   Defendants' conduct was extreme and outrageous, and beyond the bounds of decency tolerated in a civilized society. Specifically, when Defendants knowingly and negligently (1) failed to call for emergency medical treatment; (2) called the police department; (3) detained Decedent; (4) used unnecessary and unreasonable force in detaining Decedent who was struggling to breath;  (5) failed to provide medical assistance to Decedent who was struggling to breath; and (6) refused to allow the Minassian Family to assist Decedent.

118.   Defendants' conduct was negligently caused Plaintiff Antranik Minassian, Danny Minassian, and Marie Minassian witnessed the Decedent suffer and ultimately die as a result of Defendants' conduct. Defendants acted with negligent and reckless disregard to the probability that Plaintiffs would suffer emotional distress.

119.   Plaintiffs suffered severe emotional distress. Defendants' conduct was a substantial factor in causing Plaintiffs severe emotional distress. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered severe mental anguish, emotional distress, and humiliation and suffered from associated physical manifestations and injuries in a sum to be proven at trial.

- 24 –

SECOND AMENDED COMPLAINT FOR DAMAGES

120.   Plaintiffs are informed and believe that the conduct of Defendants and Plaintiffs' injuries resulted from and arose directly out of Defendants' employment with the City of Montebello.  Defendants' conduct was motivated and arose, in whole or in part, by a desire to serve Defendant City of Montebello.  The City is liable for the acts, omissions and conduct of its employees pursuant to California Government Code Section 815.2.

121.   As a direct and proximate result of Defendants' conduct, Plaintiffs actually suffered past and future special damages, past and future general damages, mental anguish, emotional distress, and injury to his mind in an amount according to proof at trial.

122.   As a direct and proximate result of Defendants' conduct, Plaintiff Antranik Minassian, Danny Minassian, and Marie Minassian have sustained pecuniary loss resulting from the loss of society, comfort, attention, and services of Decedent David Minassian in an amount to be proven at trial.

123.   As a further direct and proximate result of Defendants' conduct, Plaintiff Antranik Minassian, Danny Minassian, and Marie Minassian have incurred funeral and burial expenses in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs *ANTRANIK MINASSIAN, DANNY MINASSIAN,* and *MARIE MINASSIAN* pray for judgment against the City of Montebello, Officers Nakagawa, Chavez, and Powers, and DOES 4 - 15, inclusive, as follows:

1.   For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount of $20 million;

2.   For funeral and burial expenses, and loss of financial support;

3.   For punitive damages against the individual defendants in an amount to

be proven at trial;

4.    For interest;

5.    For reasonable attorneys' fees, including litigation expenses;

6.    For costs of suit; and

7.    For such further other relief as the Court may deem just, proper, and appropriate.

### **DEMAND FOR JURY TRIAL**

Plaintiffs *ANTRANIK MINASSIAN, DANNY MINASSIAN,* and *MARIE MINASSIAN* hereby demand a jury trial.

DATED:  June 02, 2020

KIRAKOSIAN  LAW, APC


                                         */s/ Greg L. Kirakosian*
                                    By: _____.
                                         GREG L. KIRAKOSIAN
                                         Attorneys for Plaintiffs
                                         *ANTRANIK MINASSIAN, DANNY*
                                         *MINASSIAN,* and *MARIE MINASSIAN*

- 26 –

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28